**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMES EVERETT SHELTON, et al.** | : | |
| | : | **NO. 3:26-CV-02320** |
| v. | : | |
| | : | |
| **EMERALD LAKES ASSOCIATION, INC.** | : | **(MEHALCHICK, J.)** |
| | : | |

# BRIEF IN SUPPORT OF DEFENDANT, EMERALD LAKES ASSOCIATION, INC.'S MOTION TO DISMISS

Respectfully submitted,

**KANE, PUGH, KNOELL, TROY & KRAMER, LLP**

DATE: 9/17/2026 BY: */s/ Thomas J. Zimmerman*

PAUL C. TROY, ESQUIRE
THOMAS J. ZIMMERMAN, ESQUIRE
Attorney I.D. Nos.: PA 60875 / 316288
4 Sentry Parkway East, Suite 100
Blue Bell, PA 19422
T: (610) 275-2000
F: (610) 275-2018
ptroy@kanepugh.com
tzimmerman@kanepugh.com

# TABLE OF CONTENTS
## Brief in Support of Motion to Dismiss


I. PROCEDURAL HISTORY ........................................................1

II. STATEMENT OF FACTS ........................................................2

III. QUESTIONS PRESENTED ........................................................4

IV. LEGAL ARGUMENT ........................................................4

A. Plaintiffs cannot state a viable claim under the UTPCPL ....................5

i. *Plaintiffs' activity falls outside the scope of the UTPCPL* .........6

ii. *In the alternative, Plaintiffs have not articulated conduct on the part of ELA that is violative of the UTPCPL* ..............................9

iii. *Without a UTPCPL claim, Plaintiffs cannot satisfy CAFA's jurisdictional threshold* ..............................12

B. Plaintiffs have not stated a viable claim under the UPCA ..................12

i. *The Declaration enables ELA to regulate rentals* ....................13

ii. *Chan is materially distinguishable from the present case* ........17

V. RELIEF ........................................................20

# TABLE OF AUTHORITIES

## CASES

*220 W. Rittenhouse Square Condo. Ass'n v. Stolker*,
2012 Phila. Ct. Com. Pl. LEXIS 123 (Phila. Cnty. C.C.P. May 16, 2012) ..............8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................4

*Carey v. Soc'y Hill Towers Owners Ass'n*,
2026 U.S. Dist. LEXIS 162011, 2026 WL 2111722 (E.D. Pa. July 22, 2026) .........8

*Chan v. Ass'n of Prop. Owners of the Hideout, Inc.*,
323 A.3d 92 (Pa. Cmwlth. 2024) ..................................................13, 17, 18

*City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*,
908 F.3d 872 (3d Cir. 2018)..........................................................................4

*Conboy v. U.S. Small Bus. Admin.*, 992 F.3d 153 (3d Cir. 2021).............................7

*Fogarty v. Hemlock Farms Cmty. Ass'n*, 685 A.2d 241 (Pa. Cmwlth. 1996)....15, 16

*Forest Highlands Cmty. Ass'n v. Hammer*, 903 A.2d 1236 (Pa. Super. 2006) ........15

*Franco-Calzada v. United States*, 375 Fed. Appx. 217 (3d Cir. 2010)...................20

*Frederico v. Home Depot*, 507 F.3d 188 (3d Cir. 2007) ...................................5, 10

*Gibson v. Progressive Specialty Ins. Co.*,
2015 U.S. Dist. LEXIS 63144, 2015 WL 2337294 (E.D. Pa. May 13, 2015) ......8, 9

*Groninger v. Aumiller*, 644 A.2d 1266 (Pa. Super. 1994).......................................14

*Growall v. Maietta*, 931 A.2d 667 (Pa. Super. 2007) ...............................................6

*Hall v. Equifax Info. Servs., LLC*, 204 F.Supp.3d 807 (E.D. Pa. 2010) .................11

*Hess v. Barton Glen Club, Inc.*, 718 A.2d 908 (Pa. Cmwlth. 1998)...........15, 16, 19

*Hollinger v. Dietrich*,
2026 Pa. Super. LEXIS 328, 2026 PA Super 133 (Pa. Super. June 23, 2026)..........8

*Hovagimian v. Home Exch. NJ LLC*,
2025 U.S. Dist. LEXIS 27947, 2025 WL 539683 (E.D. Pa. Feb. 18, 2025).............7

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997)...............10

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198 (3d Cir. 2002)...........10

*In re Smith*, 866 F.2d 576 (3d Cir. 1989)..................................................................7

*In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256 (3d Cir. 2006)..................5

*Jones v. Park Lane for Convalescents*, 120 A.2d 535 (Pa. 1956)............................14

*Kelly v. Progressive Advanced Ins. Co.*, 159 F.Supp.3d 562 (E.D. Pa. 2016)..........8

*Kirwin v. Sussman Auto.*, 149 A.3d 333 (Pa. Super. 2016)....................................11

*Krishnan v. Cutler Grp., Inc.*, 171 A.3d 856 (Pa. Super. 2017)................................8

*Lal v. Ameriquest Mortg. Co.*, 858 A.2d 119 (Pa. Super. 2004) ...........................6, 7

*Lum v. Bank of America*, 361 F.3d 217 (3d Cir. 2004).............................................5

*Meadow Run & Mountain Lake Park Ass'n v. Berkel*,
598 A.2d 1024 (Pa. Super. 1991) .........................................................................16

*Pastore v. Lake Shore Maintenance Assoc.*, 178 A.2d 776 (Pa. Super. 1962).........19

*Reilly et al. v. Arrowhead Lake Community Association, Inc.*,
No. 314 CD 2026 (Pa. Cmwlth.) (pending)............................................................19

*River Park House Owners Ass'n v. Crumley*, 47 A.3d 870 (Pa. Cmwlth. 2012).....15

*Romero v. Allstate*,
2017 U.S. Dist. LEXIS 31965, 2017 WL 895593 (E.D. Pa. March 7, 2017) ...........8

*Ruffed Grouse Ridge Owners' Ass'n v. Hura*,
317 A.3d 665 (Pa. Cmwlth. 2024) ....................6, 7

*Slice of Life, LLC v. Hamilton Twp. Zoning Hearing Bd.*,
207 A.3d 886 (Pa. 2019) ....................14

*Spinnler Point Colony Ass'n, Inc. v. Nash*, 689 A.2d 1026 (Pa. Cmwlth. 1997) ....16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007)....................5

*Travis v. State Auto Mut. Ins. Co.*,
2023 U.S. Dist. LEXIS 28997, 2023 WL 2163975 (E.D. Pa. Feb. 22, 2023)..........6

*Valley Forge Towers S. Condo. v. Ron-Ike Foam Insulators, Inc.*,
574 A.2d 641 (Pa. Super. 1990)....................6

*VonNieda-LaGrassa v. Nationstar Mortg. LLC*,
2024 U.S. Dist. LEXIS 204908, 2024 WL 4761390 (E.D. Pa. Nov. 7, 2024)........11

**STATUTES**

28 U.S.C. § 1332(d)(2)....................1

68 Pa.C.S. § 5101 ....................1

68 Pa.C.S. § 5302(a) ....................15

68 Pa.C.S. § 5303(a) ....................15

73 P.S. § 201-1 ....................1

73 P.S. § 201-2(4)(xxi) ....................9

73 P.S. § 201-9.2(a) ....................5, 6

**RULES**

FED. R. CIV. P. 9(b) ....................5, 10

FED. R. CIV. P. 12(b)(6)....................4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMES EVERETT SHELTON, et al.** | : | |
| | : | **NO. 3:26-CV-02320** |
| v. | : | |
| | : | |
| **EMERALD LAKES ASSOCIATION, INC.** | : | **(MEHALCHICK, J.)** |
| | : | |

Plaintiffs have failed to state a viable claim against Emerald Lakes Association, Inc. ("ELA") under either the Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq.* (the "UTPCPL") or the Pennsylvania Uniform Planned Community Act, 68 Pa.C.S. § 5101 *et seq.* (the "UPCA"). Plaintiffs' activity falls outside the scope of the UTPCPL, and Plaintiffs have not articulated conduct on the part of ELA that violates the statute. Similarly, Plaintiffs have not stated a claim against ELA under the UPCA, as the "Rental Fee Program" described in the Complaint constitutes a valid exercise of its authority.

## I. PROCEDURAL HISTORY

Plaintiffs initiated this matter against ELA, asserting state law claims under the UTPCPL and UPCA. Plaintiffs claim federal jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"). *See* ECF 1, ¶11.

## II. STATEMENT OF FACTS

Emerald Lakes is a private community located in Monroe County. *Id.* at ¶26. ELA owns and maintains common elements within the community, including lakes, roads, recreational facilities, and other common areas. *Id.* Plaintiffs are owners in Emerald Lakes (and members of ELA) that have used, or currently use, their properties as rentals. *Id.* at ¶¶43-76.

Generally, Plaintiffs allege that ELA was not authorized to implement regulations concerning rentals, including a "Rental Fee Program" and related fines. *Id.* at ¶¶3-10. Plaintiffs claim that the Rental Fee Program is in conflict with ELA's covenants and, as such, ELA is not permitted to impose regulations that restrict the right of owners to rent their properties. *Id.* In other words, Plaintiffs argue that they have an unfettered right to rent, without any oversight by ELA.

Although they argue that ELA's covenants do not give it the right to regulate rentals, Plaintiffs failed to attach a copy of the governing document to the Complaint. To remedy that deficiency, a true and correct copy of ELA's Declaration of Protective Covenants, Restrictions, Exceptions, Reservations and Conditions (the "Declaration") is attached as Exhibit "A." The Declaration states, in relevant part:

> This Declaration is made as of June 2, 1975 by UNIDEL CORP., A Pennsylvania Corporation, T/A Emerald Lakes (Declarant) UNDER AND SUBJECT to the following covenants, restrictions and limitations, and all Municipal,

> County and State rules and regulations, and shall be binding upon the Grantee herein, his heirs, executors, successors, or assigns.
>
> 1. The premises to be conveyed shall be ***used for residential purposes only***. No building shall be erected, altered, placed or permitted to remain on the premises other than one detached single-family dwelling, not to exceed two stories in height, and a private garage for not more than two cars.
>
> * * *
>
> 9. Title to the lakes, recreational areas and roads (until dedicated to a municipality) shall remain in Grantor, its successors and assigns. The ***use of the lakes and recreational areas is restricted to the members in good standing*** of the Emerald Lakes Association, Inc. and ***membership in that association is limited*** to the purchasers of lots in this development and ***lessees*** of lot owners.
>
> 10. The Grantees, their heirs, executors, administrators, successors or ***assigns agree to become and remain members in good standing*** of the Emerald Lakes Association, Inc.
>
> 11. ***No signs, including "For Sale" or "For Rent"*** or any other advertisements shall be placed or displayed on any lot ***without specific permission*** of Grantor, its successors or assigns.

*See* Exhibit A, p. 1 (emphasis supplied). Although it is a concise instrument, the Declaration contains several references to renting property, including mandatory membership within ELA for owners and lessees. The covenants, along with relevant decisional law, provide a clear framework enabling rental regulations.

## III. QUESTIONS PRESENTED

(1) Whether Plaintiffs have failed to state a claim under the UTPCPL, as Plaintiffs are engaged in activity that falls outside the scope of the UTPCPL, and, further, failed to articulate conduct on the part of ELA that violates the statute?

**Suggested answer: Yes.**

(2) Whether Plaintiffs have failed to state claims under the UPCA, as the conduct alleged by Plaintiffs constitutes a valid exercise of ELA's authority?

**Suggested answer: Yes.**

## IV. LEGAL ARGUMENT

To withstand a motion to dismiss under FED. R. CIV. P. 12(b)(6), a pleading must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The reviewing court must "accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff," but "threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" must be disregarded. *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018 (citations and quotations omitted). "[C]ourts must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference,

and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

When alleging fraud or mistake, the plaintiff must meet the heightened pleading requirements of FED. R. CIV. P. 9(b). Pleading fraud requires particularized allegations of the circumstances of the fraud, including a specific false representation, knowledge of its falsity, intent, reliance, and damages. *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 270 (3d Cir. 2006). A plaintiff must plead alleged fraud with enough specificity to substantiate the claim. *Lum v. Bank of America*, 361 F.3d 217, 223-24 (3d Cir. 2004). A complaint must identify "precise misconduct" to satisfy Rule 9(b). *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

**A. Plaintiffs cannot state a viable claim under the UTPCPL**

The right to pursue an action under the UTPCPL is as follows:

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater.

73 P.S. § 201-9.2(a) (footnote omitted). Here, Plaintiffs are not engaged "primarily for personal, family or household purposes," and, further, they have failed to allege conduct by ELA related to their purchase of goods or services. *Id.* Moreover,

Plaintiffs have not alleged actionable conduct on the part of ELA. As such, their UTPCPL claim fails as a matter of law.

***i. Plaintiffs' activity falls outside the scope of the UTPCPL***

The UTPCPL is not applicable to Plaintiffs' claims, which challenge ELA's ability to regulate rentals. The UTPCPL's scope is limited to any individual "who purchases or leases goods or services ***primarily for personal, family or household purposes***" and suffers a loss due to deceptive practices. 73 P.S. § 201-9.2(a) (emphasis supplied). Applicability of the UTPCPL turns on the "***purpose*** of the purchase, not the ***type of product*** purchased" or its ordinary use. *Valley Forge Towers S. Condo. v. Ron-Ike Foam Insulators, Inc.*, 574 A.2d 641, 644 (Pa. Super. 1990) (emphasis original).

Plaintiffs argue that use of their properties as rentals qualifies as "personal, family or household purposes" due to the residential nature of a rental. *See* ECF 1, ¶217 (citing *Ruffed Grouse Ridge Owners' Ass'n v. Hura*, 317 A.3d 665 (Pa. Cmwlth. 2024)). However, "courts in Pennsylvania have distinguished between residential purpose and investment purpose when evaluating UTPCPL claims in the past." *Travis v. State Auto Mut. Ins. Co.*, 2023 U.S. Dist. LEXIS 28997, *15-16, 2023 WL 2163975 (E.D. Pa. Feb. 22, 2023) (finding that rentals do not qualify for UTPCPL protection) (citing *Growall v. Maietta*, 931 A.2d 667, 676 (Pa. Super. 2007) & *Lal v. Ameriquest Mortg. Co.*, 858 A.2d 119, 125 (Pa. Super. 2004)). Use

of a property for rental purposes does not qualify as "personal, family or household purposes" under the UTPCPL. *See*, *e.g.*, *Lal*, 858 A.2d at 125 (UTPCPL not applicable to property purchased as an investment property rather than for personal, family, or household purposes); *see also Hovagimian v. Home Exch. NJ LLC*, 2025 U.S. Dist. LEXIS 27947, * 3-4, 2025 WL 539683 (E.D. Pa. Feb. 18, 2025) (use as a rental property took it "outside the scope of the UTPCPL") (citing *In re Smith*, 866 F.2d 576, 583 (3d Cir. 1989) & *Conboy v. U.S. Small Bus. Admin.*, 992 F.3d 153, 157 (3d Cir. 2021)).

Plaintiff's reliance on *Hura*,[1] attempting to establish a "personal and household character" to rentals, is misplaced. *See*, *e.g.*, ECF 1, ¶217. The *Hura* decision dealt with one association's attempted ban on the practice of short-term rentals. It did not abrogate, modify, or even remotely address decades of jurisprudence finding the UTPCPL inapplicable to rentals, discussed *supra*.

---

[1] In *Ruffed Grouse Ridge Owners' Ass'n v. Hura*, the Commonwealth Court interpreted a restrictive covenant which stated that properties "shall not at any time be used for commercial purposes, but the use of the same shall be limited strictly to private residential purposes only." 317 A.3d 665, 667 (Pa. Cmwlth. 2024). The Court found that the association, which had sued the defendant-owner for breaching that covenant by renting, had failed to establish "plain disregard" of the covenant's terms. It also found that the association was not challenging the right of owners to rent their properties on an annual or semi-annual basis, and that it was instead seeking to ban only short-term rentals of a more transient nature. *Id.* at 670. The Court found that the covenant was intended to prohibit properties from being used to operate a business enterprise, not as a ban on short-term rentals. *Id.* at 671. Accordingly, the Court affirmed the trial court's grant of summary judgment in favor of the homeowner.

Furthermore, Plaintiffs do not claim any connection between the alleged deceptive conduct, *i.e.*, the Rental Fee Program, and their purchase of property in Emerald Lakes.[2] First, state and federal courts have noted that the UTPCPL does not apply to payments made by owners to community associations. *See Carey v. Soc'y Hill Towers Owners Ass'n*, 2026 U.S. Dist. LEXIS 162011, *9-12, 2026 WL 2111722 (E.D. Pa. July 22, 2026) (assessments do not constitute a "purchase" for purposes of the UTPCPL); *see also 220 W. Rittenhouse Square Condo. Ass'n v. Stolker*, 2012 Phila. Ct. Com. Pl. LEXIS 123, *10-11 (Phila. Cnty. C.C.P. May 16, 2012) (same). Second, while the UTPCPL may be implicated in connection with transactions involving real property, ELA is unaware of any decisional law applying the UTPCPL to regulations promulgated by an association. *See Hollinger v. Dietrich*, 2026 Pa. Super. LEXIS 328, 2026 PA Super 133 (Pa. Super. June 23, 2026) (discussing UTPCPL claim about alleged misrepresentations in sale of real property); *Krishnan v. Cutler Grp., Inc.*, 171 A.3d 856 (Pa. Super. 2017) (same).

The UTPCPL is concerned with the initial purchase of goods or services, not later disputes in an ongoing contractual relationship. *See Romero v. Allstate*, 2017 U.S. Dist. LEXIS 31965, *2-3, 2017 WL 895593 (E.D. Pa. March 7, 2017) (quoting *Kelly v. Progressive Advanced Ins. Co.*, 159 F.Supp.3d 562, 564-65 (E.D. Pa. 2016) & *Gibson v. Progressive Specialty Ins. Co.*, 2015 U.S. Dist. LEXIS

[2] Plaintiffs each assert membership in ELA, and thus standing to sue, by virtue of their ownership of property, not via leasehold. *See* ECF 1, ¶¶43, 49, 71.

63144, 2015 WL 2337294 (E.D. Pa. May 13, 2015)). The Eastern District of Pennsylvania has noted that an action against an insurer under the UTPCPL "cannot be based on a failure to perform a contractual obligation, such as the failure to pay a claim or a failure to investigate pursuant to the contract." *Gibson*, 2015 U.S. Dist. LEXIS 63144, *9-10. Similarly, a claim against a community association, for a dispute arising under its declaration and after the date of purchase, cannot form the basis for a claim under the UTPCPL.

As Plaintiffs' claims fall outside the scope of the UTPCPL, Plaintiffs have failed to state a claim under that statute. The fundamental thrust of Plaintiffs' claim is that ELA's Rental Fee Program conflicts with its Declaration. Although ELA contends that Plaintiffs also have failed to state a claim under the UPCA, *see* Section IV(B), their allegations are more appropriately suited to a claim under that statute, not the UTPCPL.

***ii. In the alternative, Plaintiffs have not articulated conduct on the part of ELA that is violative of the UTPCPL***

Plaintiffs' UTPCPL claim is based on the statute's catch-all provision, which prohibits "other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." *See* ECF 1, ¶216 (quoting 73 P.S. § 201-2(4)(xxi)). Plaintiffs claim that ELA engaged in "deceptive conduct" by representing "that it had lawful authority to impose and collect the Rental Fee Program charges and that those charges were valid, enforceable obligations

Owners were required to pay as a condition of renting." ECF 1, ¶220. Plaintiffs argue that ELA's "Declaration grants the unqualified right to rent," and that ELA "failed to disclose to Plaintiffs . . . that the Rental Fee Program was contrary to the Declaration, had never been approved through any required amendment process, and that Owners had the right to rent without paying the unauthorized charges." *Id.* at ¶¶221-222. Plaintiffs also claim that ELA deceived them by failing to disclose the existence of a Commonwealth Court decision that purportedly supports their position. *Id.* at ¶223.

Plaintiffs do not specifically allege that ELA engaged in fraud or intentional misconduct, instead framing ELA's representations as "deceptive conduct." *Id.* at ¶216 However, if the Court determines that Plaintiffs' allegations rise to the level of fraud, Plaintiffs have failed to satisfy the strict requirements of Rule 9(b).[3]

---

[3] Rule 9(b) requires the plaintiff to "plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). Plaintiffs have failed to meet this standard because they have not alleged fraud with specificity. While Plaintiffs allege the content of the misrepresentations, including ELA's belief that it has authority to regulate rentals, they do not specify who made the alleged misrepresentations or when, where, or how these misrepresentations were made. The Complaint does not identify a representative of ELA who purportedly made these statements. The Complaint does not identify whether the statements were made orally or in writing. Nor does the Complaint otherwise inject precision or specificity. Without pleading "who, what, when, where, and how" details about the alleged fraud, Plaintiffs have failed to meet the heightened Rule 9(b) standard for their UTPCPL claim. *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1422 (3d Cir. 1997)).

Even under the less rigorous pleading standards for non-fraudulent conduct, such as a claim for deceptive conduct under the UTPCPL, "a plaintiff must demonstrate: (1) a deceptive act that is likely to deceive a consumer acting reasonably under similar circumstances; (2) justifiable reliance; and (3) that the plaintiff's justifiable reliance caused ascertainable loss." *Hall v. Equifax Info. Servs., LLC*, 204 F.Supp.3d 807, 810 (E.D. Pa. 2010) (citations omitted). In addition to proving fraud or deceptive conduct, a plaintiff "must still prove justifiable reliance and causation, because the legislature never intended the statutory language directed against consumer fraud to do away with the traditional common law elements of reliance and causation." *Kirwin v. Sussman Auto.*, 149 A.3d 333, 336 (Pa. Super. 2016) (quotations omitted).

Here, Plaintiffs allege that ELA's interpretation of the law, specifically a decision from an intermediate appellate court concerning the ability of an association to promulgate rental regulations within a planned community, constitutes deceptive conduct. While Plaintiffs clearly disagree with ELA's application of the law to its Declaration, the mere fact that the parties disagree over the law does not render ELA's conduct fraudulent or deceptive. *See*, *e.g.*, *VonNieda-LaGrassa v. Nationstar Mortg. LLC*, 2024 U.S. Dist. LEXIS 204908, *6, 2024 WL 4761390 (E.D. Pa. Nov. 7, 2024) ("disagreement about the correct

interpretation of HUD regulations is not enough to sufficiently plead violations of the UTPCPL . . . .").

Similarly, Plaintiffs have failed to satisfy the requirements of justifiable reliance or causation, as Plaintiffs do not allege that they were deceived by ELA. They have simply noted a fundamental dispute in the parties' interpretation of ELA's Declaration. Again, this does not rise to the level of a UTPCPL violation.

***iii. Without a UTPCPL claim, Plaintiffs cannot satisfy CAFA's jurisdictional threshold***

Based on the foregoing, Plaintiffs cannot articulate a viable UTPCPL claim, and ELA respectfully requests that the Court dismiss Count I of the Complaint, with prejudice. Because Plaintiffs have failed to articulate viable UTPCPL claims, Plaintiffs cannot satisfy the $5 million threshold required to confer federal jurisdiction under CAFA. Plaintiffs' jurisdictional allegations rely entirely upon computation of potential damages under the UTPCPL. *See*, *e.g.*, ECF 1, ¶¶11-16. Accordingly, should the Court dismiss Plaintiffs' UTPCPL claims only, ELA respectfully requests that the Court remand this matter to Monroe County.

**B. Plaintiffs have not stated a viable claim under the UPCA**

According to Plaintiffs, ELA is prohibited from regulating rentals in the community because its covenants do not contain language expressly granting such authority. Despite the existence of clear "use" restrictions in ELA's covenants, Plaintiffs still contend that the absence of specific language prohibits ELA from

regulating rentals. In support of their argument, Plaintiffs rely on a single, distinguishable decision: *Chan v. Ass'n of Prop. Owners of the Hideout, Inc.*, 323 A.3d 92 (Pa. Cmwlth. 2024), *app. denied*, 333 A.3d 1250 (Pa. 2024).

Taking their argument to its logical conclusion, Plaintiffs contend that they have an absolute right to rent their property, without any oversight by ELA. Plaintiffs' argument is without merit.

***i. The Declaration enables ELA to regulate rentals***

There is no dispute that ELA's Declaration generally provides for the right of owners to rent properties within the community, subject to certain restrictions. Specifically, the Declaration states that use of common areas is restricted to members of ELA, which include owners and lessees. *See* Exhibit A, p. 1. It also states that owners and renters must become (and remain) members in good standing of ELA. *Id.* The Declaration also provides that members may not post "For Rent" signs on lots without prior approval from ELA. *Id.*

ELA agrees that this language provides a clear right for owners to rent their properties, and it does not seek to impose unreasonable limitations on that general right. However, the language quoted above also clearly provides that the right is specifically conditioned on membership in ELA.

By way of background, the quoted covenants are "use" restrictions, which permit ELA to regulate the use of properties. Within the context of restrictive

covenants, Pennsylvania courts recognize a distinction between "building" and "use" restrictions. *See Jones v. Park Lane for Convalescents*, 120 A.2d 535, 538 (Pa. 1956). In contrast to "building" restrictions, which concern a building's physical appearance, "use" restrictions involve "the purposes for which the buildings are used, the nature of their occupancy, and the operations conducted therein as affecting the health, welfare and comfort of the neighbors." *Id.* For a covenant to qualify as a "use" restriction, its "language must squarely address the use or manner of occupation of the property." *Groninger v. Aumiller*, 644 A.2d 1266, 1267 (Pa. Super. 1994) (citing *Jones*, 120 A.2d at 538).

It is without dispute that the covenants clearly contemplate limitations on the use of properties within the community, for single family residential purposes only. In *Slice of Life, LLC v. Hamilton Twp. Zoning Hearing Bd.*, the Pennsylvania Supreme Court noted that short-term rentals typically are considered incompatible with a single-family use restriction, as they are a "purely transient use" of a dwelling not normally a permitted use under such limitations.[4] 207 A.3d 886, 903 (Pa. 2019). Here, the express grant of a right of use (for rental purposes) on the part of property owner, when coupled with express use restrictions (on the right to use and rent) necessitates a finding that ELA is authorized to regulate rentals.

---

[4] While *Slice of Life* dealt with interpretation of a zoning ordinance (rather than restrictive covenants), the case is instructive on the nature of the authority granted to ELA by its covenants.

The Commonwealth Court of Pennsylvania has previously noted that a homeowners' association "may be viewed as a miniature government." *Hess v. Barton Glen Club, Inc.*, 718 A.2d 908, 912 (Pa. Cmwlth. 1998). The authority of a homeowners' association to enact regulations and impose assessments, even in the absence of express authority in the declaration, is well established under Pennsylvania law. *See*, *e.g.*, *Fogarty v. Hemlock Farms Cmty. Ass'n*, 685 A.2d 241, 243-44 (Pa. Cmwlth. 1996). Indeed, the UPCA grants broad powers to community associations, including the ability to adopt and amend bylaws, make contracts, hire and terminate managing agents, and regulate use of common elements. *See*, *e.g.*, *Forest Highlands Cmty. Ass'n v. Hammer*, 903 A.2d 1236, 1238 (Pa. Super. 2006) (citing Section 5302(a) of the UPCA); *see also River Park House Owners Ass'n v. Crumley*, 47 A.3d 870, 871 (Pa. Cmwlth. 2012) (citing sections of the Uniform Condominium Act, which contains nearly identical language to that found in the UPCA). Additionally, the UPCA permits associations to collect assessments for common expenses and "[e]xercise any other powers necessary and proper for the governance and operation of the association." *See* 68 Pa.C.S. § 5302(a)(2), (16). The association's governing body is expected to execute those powers in good faith, "in a manner they reasonably believe to be in the best interests of the association." *See* 68 Pa.C.S. § 5303(a).

While ELA does not dispute that owners have the right to rent, that right is not unqualified, and may be reasonably regulated. In Pennsylvania, the absence of express covenants will not prohibit an association from action; to the contrary, associations enjoy an inherent ability to regulate activity within their communities unless an express prohibition exists in the covenants. *See*, *e.g.*, *Hess*, 718 A.2d at 912 ("where a deed is silent on whether a homeowners' association has the authority to make . . . an assessment, the homeowners may be assessed their proportionate costs of common improvements."); *see also Spinnler Point Colony Ass'n, Inc. v. Nash*, 689 A.2d 1026, 1028-29 (Pa. Cmwlth. 1997) (holding that owners were required to pay assessments despite the fact that their chain of title made no reference to homeowners' association); *Fogarty*, 685 A.2d at 244 ("absent language in the deed covenant prohibiting [the association] from levying special assessments for capital improvements, [the plaintiffs] may be assessed their proportionate costs to construct the new improvements"); *Meadow Run & Mountain Lake Park Ass'n v. Berkel*, 598 A.2d 1024, 1027 (Pa. Super. 1991) ("absent an express agreement prohibiting assessments . . . inherent in [the association's] authority is the ability to impose reasonable assessments on the property owners to fund the maintenance of [common] facilities."). The language in the covenants, when read in conjunction with the mandatory case law cited *supra*, clearly supports a finding that ELA is authorized to regulate rentals.

### *ii. Chan is materially distinguishable from the present case*

Plaintiffs base their argument entirely on the case of *Chan v. Ass'n of Prop. Owners of the Hideout, Inc.*, 323 A.3d 92 (Pa. Cmwlth. 2024), *app. denied*, 333 A.3d 1250 (Pa. 2024). In that case, the Commonwealth Court found that the association's declaration did not authorize it to enact rental regulations. *Chan*, 323 A.3d at 105. First, it should be noted that the association in *Chan* attempted to enact substantial restrictions on rentals, including an annual limit of 10 short-term rentals. *Id.* at 96. There are no such restrictions found in ELA's rental policies.

The Court also noted that the declaration in *Chan* contained the following introduction:

> NOW THEREFORE, Declarant declares that ***all of the lots*** and parcels ***located within the Development are held and shall be held*** conveyed, hypothecated or encumbered, leased, ***rented***, ***used***, ***occupied*** and improved, ***subject to the following declarations***, all of which are declared and agreed to be in furtherance of a plan for the development, improvement and sale of said lots and parcels, and are established for the purpose of enhancing and protecting the value, desireability and attractiveness of the Development as a whole and each of said lots and parcels situated therein.

*Id.* at 98 (emphasis in original). The Court highlighted certain relevant restrictions within the declaration, including restrictions on the types of buildings that could be erected. *Id.* at 98-99. Emphasizing the declaration's prefatory language, the *Chan* Court determined that the covenants "expressly authorize[d] the rental of 'all of the

lots,'" while noting that "[t]here is no 'restriction' placed 'specifically' on the ***use*** of 'such Lots.'" *Id.* at 104 (emphasis supplied). In other words. the association's covenants in *Chan* expressly "declare[d]" that owners had an unfettered right to rent their properties "subject to the following declarations," which included building restrictions only. The Court went on to hold that because the association's declaration did not contain express use restrictions, it could not impose any restrictions on rentals. *Id.* at 104-05. Instead, the declaration merely limited improvements on residential lots to single-family dwellings. *Id.* at 104. Focusing on the declaration's definition of a "single-family home," the Court found that this language constituted a plain "building" or "construction" restriction, unaccompanied by corresponding "use" restrictions. *Id.* at 104-05. Accordingly, the *Chan* Court found that the declaration did not authorize the association to restrict the use of homes in the community, including use as rentals. *Id.* at 105.

In stark contrast, ELA's covenants explicitly and unambiguously vest it with the authority to regulate both the type of buildings which can be constructed, as well as their subsequent use. The Declaration states: "The premises to be conveyed shall be ***used for residential purposes only***." Exhibit A, p. 1 (emphasis supplied). Moreover, the Declaration states that "***use of the lakes and recreational areas*** is ***restricted to the members in good standing*** of the Emerald Lakes Association, Inc.

and ***membership in that association is limited*** to the purchasers of lots in this development and ***lessees*** of lot owners." *Id.* (emphasis supplied).

Contrary to the association's declaration in *Chan*, the inclusion of clear use restrictions in ELA's covenants vests the Board with power to regulate the use of properties within the community, including, but not limited to, rentals. Thus, the declaration from *Chan* is materially different from ELA's covenants, and the two cases are readily distinguishable. As such, *Chan* must be limited to its facts.[5]

Lastly, ELA's rental policies are nothing more than a reasonable regulation on the general right of owners to rent their properties, which comport with ELA's broad rights to enact and enforce rules for the health, safety and welfare of members. Indeed, charges that are fixed as a matter of administration of an association, such as those complained of here, "do not amount to restrictions . . . ." *Pastore v. Lake Shore Maintenance Assoc.*, 178 A.2d 776, 778 (Pa. Super. 1962). Adoption of rental policies are the kinds of duties that ELA, as a "miniature government," is implicitly authorized to exercise. *Hess v. Barton Glen Club, Inc.*,

[5] Additionally, ELA notes that the matter of *Reilly et al. v. Arrowhead Lake Cmty. Ass'n*, No. 314 CD 2026, is currently pending in the Commonwealth Court of Pennsylvania. In that case, the Monroe County Court of Common Pleas limited *Chan* to its facts, finding that the defendant-association had authority to regulate rentals under the terms of its declaration. A true and correct copy of the trial court's opinion in *Reilly* is attached hereto as Exhibit "B."

The *Reilly* matter has been fully briefed and is awaiting submission to a panel of judges. ELA respectfully submits that the Commonwealth Court's decision in *Reilly* will be instructive on the question of *Chan*'s applicability to this matter.

718 A.2d 908, 912 (Pa. Cmwlth. 1998). To suggest otherwise, as Plaintiffs do, would significantly and severely compromise the ability of community associations across the Commonwealth to effectively govern their communities.[6]

## V. RELIEF

A district court may deny leave to amend on the basis of futility when "no additional allegations would cure the defects in the Complaint . . . ." *Franco-Calzada v. United States*, 375 Fed. Appx. 217, 220 (3d Cir. 2010). Plaintiffs' claims are fatally flawed, as Plaintiffs' activity falls outside the scope of the UTPCPL, and they have failed to articulate a viable claim under the statute. Furthermore, the UPCA claims fail because ELA has authority to regulate rentals within the community, and Plaintiffs' arguments to the contrary rely upon a misinterpretation of decisional law.

Based on the foregoing argument and authorities, Defendant, Emerald Lakes Association, Inc. respectfully requests that this Honorable Court enter an Order dismissing Plaintiffs' Complaint, with prejudice.

---

[6] Plaintiffs argue that ELA should not be permitted to impose any regulations on rentals in the community. Under Plaintiffs' interpretation of *Chan*, ELA would be precluded from collecting information about anyone renting property in the community. This is in stark conflict with the Declaration, which requires both owners and lessees to become members of the association, and to remain members in good standing. *See* Exhibit A, p. 1. Plaintiff's argument, taken to its logical conclusion, would leave ELA without any information regarding renters staying in the community or using its amenities. Essentially, ELA would be blind to a significant portion of its membership.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMES EVERETT SHELTON, et al.** | : | |
| | : | **NO. 3:26-CV-02320** |
| v. | : | |
| | : | |
| **EMERALD LAKES** | : | **(MEHALCHICK, J.)** |
| **ASSOCIATION, INC.** | : | |

## CERTIFICATE OF COMPLIANCE WITH WORD-COUNT LIMIT

I, Thomas J. Zimmerman, counsel for Defendant, certify that this brief complies with the word-count limit described in Local Rule 7.8(b)(2). Relying on the word-count feature of Microsoft Word, I certify that the brief, including footnotes, contains **4,948** words, excluding the Cover Page, Tables of Contents, Table of Authorities, Certificate of Compliance with Word-Count Limit, Certificate of Nonconcurrence, and Certificate of Service.

**KANE, PUGH, KNOELL, TROY**
**& KRAMER, LLP**

DATE: 9/17/2026 BY: */s/ Thomas J. Zimmerman*
PAUL C. TROY, ESQUIRE
THOMAS J. ZIMMERMAN, ESQUIRE